OPINION
The first count of the indictment pertaining to appellant alleged that in August of 1993, appellant took several fifty-five gallon drums of gasoline for personal use while he was a public official, charging said gasoline to the Ashtabula Township Park Account. The property involved was estimated to have a value of less than $500. A second count similarly alleged that in August of 1993, appellant took gasoline for himself and other individuals for personal use, charging said gasoline to the Ashtabula Township Park Account. The property involved was estimated to have a value of less than $500. A third count alleged that in April of 1995, appellant purchased gasoline for himself and his wife's private automobile, charging said gasoline to the Ashtabula Township Park Account. The property involved was estimated to have a value of less than $500.
A fourth count of the indictment pertaining to appellant alleged that in November of 1993, appellant purchased power tools and chain saws for his private use, charging said items to the Ashtabula Township Park Account. The property involved was estimated to have a value in excess of $500 but less than $5,000. A fifth count alleged that in February of 1992, appellant purchased door bells, a water heater, and other repair material for his home, charging said material to the Ashtabula Township Park Account. The property involved was estimated to have a value in excess of $500 but less than $5,000. A sixth count alleged that in July of 1990, appellant purposely committed fraud in order to receive workers' compensation benefits to which he was not entitled and that he made false and misleading statements for the purpose of securing said workers' compensation benefits. Said benefits were estimated to have a value in excess of $500 but less than $5,000.
On October 4, 1996, appellant was arraigned before the trial court and entered a plea of not guilty. Appellant thereafter entered into a negotiated plea agreement pursuant to Crim.R. 11(F), whereby he agreed to change his initial not guilty plea and enter a guilty plea to the third, fourth and fifth counts of the indictment pertaining to him. Appellant also withdrew his initial not guilty plea to the sixth count relating to workers' compensation fraud and entered a no contest plea. The first and second counts of the indictment pertaining to appellant were dismissed at the request of plaintiff-appellee, state of Ohio.
On July 7, 1997, appellant was sentenced to a definite incarceration term of eighteen months on each count to which he pled, at the Lorain Correctional Institution in Grafton, Ohio. Said sentences were to run concurrently. The trial court further ordered that "if the parties cannot stipulate as to the amount of restitution owed, they will notify the Court so that a hearing can be held before the Court to determine restitution." (Judgment Entry filed July 15, 1997, 2).
On August 21, 1997, appellant filed a motion for judicial release which was subsequently amended to a motion for shock probation. On September 4, 1997, said motion was overruled by the trial court. Clearly, no agreement with regards to restitution was reached between appellant and appellee, thereby necessitating a hearing on this issue before the trial court.
On February 6, 1998, a hearing was held to determine the amount of restitution owed by appellant. At said hearing, the trial court ordered counsel for both sides to submit briefs as to the court's jurisdiction on the issue of restitution. On February 19, 1998, said motions were filed. By judgment entry filed March 5, 1998, the trial court found that it did have jurisdiction on the issue of restitution, and further ordered appellant to pay the amount of $25,000 as restitution to the Ashtabula Township Park Commission. It is from this decision that the within appeal emanates.
Appellant's sole assignment of error on appeal alleges:
 "The Trial court's Judgment Entry for Restitution was without evidence, and without jurisdiction."
 Appellant argues that the trial court did not have jurisdiction to order restitution since it had previously overruled his motion for shock probation. However, appellant has failed to provide this court with any case law in support of his proposition. The only authority upon which appellant relies is R.C. 2921.41
and R.C. 2951.02.
R.C. 2921.41(C)(2)(a) addresses the issue of restitution as it relates to theft in office and specifically provides, in pertinent part:
 "A court that imposes sentence for a violation of this section based on conduct described in * * * this section shall require the public official or party official who is convicted of or pleads guilty to the offense to make restitution for all of the property or the service that is the subject of the offense, in addition to the term of imprisonment and any fine imposed. * * *."
 R.C. 2951.02 sets forth the criteria which a trial court must apply in deciding whether to suspend a sentence imposed for a misdemeanor offense and allows an offender to be released on probation. R.C. 2951.02(C) further provides that a trial court can condition the imposition of probation upon the payment of restitution covering the property damage caused by the offender. R.C. 2951.02 is not controlling in the instant case as such section applies to misdemeanor offenses.
It must be noted that this court did not have the opportunity to review appellant's plea agreement, as it was not provided to this court as part of the record. However, we do have a record of the transcript of the sentencing proceeding, which clearly reveals that appellant agreed to make restitution to the victims in the within case, for those losses incurred as a result of his acts. In fact, the following colloquy was had during the sentencing hearing on July 7, 1997, between appellee and appellant's counsel:
"MR. SARTINI: * * *
"* * *
 "Obviously, the State of Ohio is interested, as it was in the case of Richard Charles, in complete restitution, to the citizens of Ashtabula County, the Township Park Board. And obviously Mr. Dean Charles can't perform restitution while incarcerated. * * * And he should be afforded that opportunity, and the State feels that incarceration, at least for some minimal period of time, would be appropriate for him to deal with those problems so he could be given an opportunity to make full restitution to the State. Thank You.
"MR. BROWN: * * *
 "Mr. Charles does have employment available for him, and understands that these circumstances that we are facing today are, your judgment, is going to require substantial restitution matters.
"* * *
 "The circumstances are very detailed in the PSI that the Court has had an opportunity to review. I'd ask the Court to consider in mitigation of its disposition at this time Mr. Charles' ability for continuing gainful employment for the purposes of addressing a very apparent restitution issue that will be resolved. * * *." (Tr. 27-30).
 Additionally, in conjunction with the sentence imposed in the instant case, the trial court specifically stated in its judgment entry filed July 15, 1997, that a hearing on the issue of restitution would be ordered in the event that the parties could not agree upon an amount, thereby expressly reserving jurisdiction to determine the amount of restitution at a later date. In fact, said judgment entry stated: "It is the further order of this Court that if the parties cannot stipulate as to the amount of restitution owed, they will notify the Court so that a hearing can be held before the Court to determine restitution." (Judgment Entry filed July 15, 1997, 2). Pursuant to R.C. 2921.41(C)(2)(a), restitution was mandated as part of appellant's sentence, and therefore, a hearing on this issue was properly held before the trial court on February 6, 1998.
Given that appellant pled guilty and/or no contest to several charges against him, the trial court acted properly in scheduling a hearing on the issue of restitution once it became clear that the parties could not agree upon an exact amount which was to be provided by appellant. See State v. Wohlgemuth (1990), 66 Ohio App.3d 195. Thus, the denial of appellant's motion for shock probation had no effect upon the trial court's jurisdiction to determine the amount of restitution which appellant owed to his victims.
This court, citing to State v. Coleman (1986), 30 Ohio App.3d 256, amongst other cases, stated in State v. Charles (Oct. 22, 1999), Ashtabula App. No. 98-A-0043, unreported, at 6-7, that "[w]hen the record demonstrates that the complained of sentence was central to the plea agreement, the defendant may not appeal from a sentence which he agreed to as part of a plea agreement." Moreover, in State v. Drake (Apr. 15, 1987), Summit App. No. 12859, unreported, at 2, 1987 WL 9836, a defendant may waive his right to challenge his sentence when he receives the agreed upon sentence.
In the instant case, appellant here, as in Charles, supra, has not asked either the trial court or this court to vacate or reverse his plea on any ground. Instead, he simply asks us to vacate the restitution portion of the trial court's order. Accordingly, we assert our previous reasoning in Charles, supra,
that the original counts of the indictment, would have qualified under the statutory provision which allows for restitution as part of the sentencing. Therefore, appellant's contention that the trial court was not within its jurisdiction to order restitution is without merit.
Appellant further argues that the trial court erroneously imposed a restitution order of $25,000 since it lacked sufficient evidence as to the value of property taken. We agree. This court has previously resolved the exact same issue in the companion case to this matter. In Charles, supra, we held that the trial court's decision to order $25,000 in restitution was against the manifest weight of the evidence. In State v. Carosella, (June 25, 1999), Mahoning App. No. 97 CA 46, unreported, at 1, 1999 WL 439027, the Seventh District Court of Appeals heard a similar issue with regards to restitution and held that "a sentencing court cannot order a defendant to pay restitution for a crime for which he was not convicted[,]" citing to State v. Friend (1990), 68 Ohio App.3d 241,242-243. The court in Carosella further cited to State v.Williams (1986), 34 Ohio App.3d 33, 34, wherein the court held in its syllabus:
 "* * * the right to order restitution is limited to the actual damage or loss caused by the offense of which the defendant is convicted. Implicit in this principle is that the amount claimed must be established to a reasonable degree of certainty before restitution can be ordered. * * *."
Furthermore, in State v. Warner (1990), 55 Ohio St.3d 31, 69, the Ohio Supreme Court held that an order of restitution must be supported by competent, credible evidence in the record. Restitution can be ordered only for those acts that constitute the crime for which the defendant was convicted and sentenced.Friend, supra, at 243.
Based upon the evidence presented at the restitution hearing, we conclude that the trial court erred in ordering appellant to pay restitution in the amount of $25,000 as there was not competent, credible evidence presented to make such finding. We note that each of the counts to which appellant pled guilty or no contest contained a specific estimated value which the trial court should have taken into consideration in calculating the amount of restitution owed to the victims in this case. Therefore, appellant's argument in this regard is well-taken.
The judgment of the trial court is affirmed as to the issue of jurisdiction and its authority to order appellant to pay restitution, but reversed and the matter remanded as to the amount of restitution appellant is ordered to pay.
CHRISTLEY, P.J., concurs in judgment only,
NADER, J., concurs.